UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER GEORGE, JESSICA CHANDRA, LISA JAME, CHELSEA MALEY, APRIL BODDIE, MICKAEL LOUIS, EDUARDO LEACH, JOSH FOLAN, LOGAN VAIRO, BASMA ATTIEH, and ROBERT CAROBENE, on behalf of themselves and a class of similarly situated individuals,<br><br>*Plaintiffs*<br><br>vs.<br><br>STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY,<br><br>*Defendant* | 19 Civ. 6185 (AJN)<br>[rel. 19 Civ. 4650 (AJN)]<br><br>Hon. Alison J. Nathan<br><br>**Oral Argument Requested** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

                                                                **Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

      I.      Plaintiffs Failed To Plead That They Each Saw The Alleged Advertisements Prior To Purchasing The Products At Issue..................................2

      II.     Plaintiffs' Opposition Fails to Assert Any Actionable Statements.........................4

            A.     Plaintiffs Do Not Allege a Single Actionable Statement by Starbucks..................................................................................................4

            B.     Plaintiffs' "Cumulative Effect" Argument is Baseless...............................5

      III.    Plaintiffs Fail to Adequately Plead How a Reasonable Consumer Would Be "Materially Misled" By Starbucks Statements....................................................8

      IV.    Plaintiffs' Request for Emotional Distress Damages Fail As a Matter of Law .........................................................................................................................9

CONCLUSION..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
   No. 09 Civ. 0395 (JG)(RML), 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ....................... 4, 5

*Alpine Bank v. Hubbell*,
   555 F.3d 1097 (10th Cir.2009) ............................................................................................... 4

*Avola v. Louisiana-Pacific Corp.*,
   991 F.Supp.2d 381 (E.D.N.Y. 2013) ...................................................................................... 4

*Belfiore v. Procter & Gamble Co.*,
   94 F. Supp. 3d 440 (E.D.N.Y. 2015) ...................................................................................... 3

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.*,
   27 F. Supp. 3d 357 (E.D.N.Y. 2014) ...................................................................................... 3

*DeAngelis v. Timberpeg E., Inc.*,
   858 N.Y.S. 2d 410 (3d Dep't 2008) ........................................................................................ 2

*Delgado v. Ocwen Loan Servicing, LLC*,
   No. 13 Civ. 4427 (NGG)(RML), 2014 WL 4773991 (E.D.N.Y. Sept. 24,
   2014) ...................................................................................................................................... 5

*Eidelman v. Sun Prod. Corp.*,
   No. 16 Civ. 3914 (NSR), 2017 WL 4277187 (S.D.N.Y. Sept. 25, 2017) ............................... 9

*Fink v. Timer Warner Cable*,
   810 F.Supp. 2d 633 (S.D.N.Y. 2011) ..................................................................................... 9

*Gale v. Int'l Bus. Machs. Corp.*,
   9 A.D.3d 446, 447 N.Y.S.2d 45 (2d Dep't 2004) ................................................................... 2

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) .................................................................................... 2, 3

*Harris v. Dutchess Cty. Bd. of Co-op Educ. Servs.*,
   25 N.Y.S.3d 527 (N.Y. Sup. Ct. 2015) ................................................................................ 10

*In re KIND LLC "Healthy & All Natural" Litig.*,
   209 F. Supp. 3d 689 (S.D.N.Y. 2016) .................................................................................... 2

*Kommer v. Bayer Consumer Health*,
   252 F. Supp. 3d 304 (S.D.N.Y. 2017) .................................................................................... 9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..........................................................................................................2

*Oden v. Boston Scientific Corporation*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) ..............................................................................3

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005)....................................................................................6, 7, 8

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F. Supp. 2d 439 (S.D.N.Y. 2005)...............................................................................8

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    No. 02 Civ. 7821 (RWS), 2003 WL 22052778 (S.D.N.Y. Sept. 3, 2003)................................7

*Petrosino v. Stearn's Prods., Inc.*
    2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ........................................................................5

*Precision Imaging of New York, P.C.*,
    263 F.Supp.3d (S.D.N.Y. 2017)..........................................................................................7

*Small v. Lorillard Tobacco Co.*,
    252 A.D.2d 1, 679 N.Y.S.2d 593 (1998) ..............................................................................4

*Vitolo v. Mentor H/S, Inc.*,
    426 F. Supp. 2d 28 (E.D.N.Y. 2006) .................................................................................9

*Weyant v. Phia Group LLP*,
    2018 WL 4387557 (S.D.N.Y. 2018).................................................................................7

**Statutes**

Consumer Protection Act....................................................................................................8

New York General Business Code §§ 349 and 350................................................................ *passim*

iii

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition gets them no closer to establishing how any of the statements they have identified are actionable or materially misleading under GBL §§ 349 and 350 or how any of the statements caused Plaintiffs' purported injuries.

First, Plaintiffs' argument that reliance is not an element of their claims ignores the fact that one of the elements of Plaintiffs' claims, and a requirement for Article III standing, is that Plaintiffs need to show a causal connection between the alleged misrepresentation and their alleged injury. This is fatal to Plaintiffs' claims because they do not expressly allege that they saw any allegedly deceptive advertisements prior to their purchase of Starbucks products, nor do they allege sufficient facts to permit an inference that they did.

Second, unable to rebut Defendant's argument that the statements identified in the complaint are classic inactionable puffery or opinions, Plaintiffs argue that the "cumulative effect" of Defendant's ad campaign is misleading. But it defies common sense that a series of inactionable statements would be actionable collectively, and Plaintiffs cite no case law standing for that novel proposition.

Third, Plaintiffs do not address Defendant's argument that it is implausible that general and vague statements like "[a] company that cares" would inform a reasonable consumer about the conditions of any particular Starbucks store, particularly given that the NYC Department of Health conducts periodic health inspections and the resulting grades are posted near the entry of each store.

Starbucks identified each of these deficiencies in its Motion to Dismiss Plaintiffs' Complaint (ECF No. 18) ("**Initial MTD**"), but despite opportunity to attempt to address them, Plaintiffs have failed to do so. Accordingly, the Court should dismiss Plaintiffs' claims with prejudice.

# ARGUMENT

## I. Plaintiffs Failed To Plead That They Each Saw The Alleged Advertisements Prior To Purchasing The Products At Issue

Plaintiffs acknowledge that they did not expressly allege that they saw the Starbucks advertisements at issue prior to any purchases, but argue that reliance is not an element of their GBL §§ 349 and 350 claims. Plaintiffs' Opposition to Defendant's Motion to Dismiss the Amended Complaint (ECF No. 31) ("**Opposition**") at 7-10. This is not responsive to Defendant's actual argument, which is that Plaintiffs have failed to allege that their purported injury was the result of any alleged deceptive act or practice.[1] To satisfy this causation element—and to have Article III standing[2]—a "plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (citing *Gale v. Int'l Bus. Machs. Corp.*, 9 A.D.3d 446, 447 N.Y.S.2d 45 (2d Dep't 2004)).

Plaintiffs urge the Court to infer that they were aware of Defendant's statements prior to their purchases. Opp. at 10. The sparse facts alleged in the Amended Complaint do not permit such an inference. Plaintiffs do not allege when Starbucks made the statements; where they were published, or for how long; or where, when, or how they saw or heard the statements. Courts

---

[1] Plaintiffs concede that this is a requirement of GBL §§ 349 and 350. Opp. at 7 (*citing DeAngelis v. Timberpeg E., Inc.*, 858 N.Y.S. 2d 410, 414 (3d Dep't 2008)).

[2] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992) (a plaintiff must have suffered (1) an injury in fact that is (2) "fairly trace[able] to the challenged action of the defendant" and (3) "likely" that the injury will be "redressed by a favorable decision.") (internal quotations and citations omitted); *In re KIND LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 3d 689, 697 (S.D.N.Y. 2016) ("Critically, it is unclear whether Plaintiffs have standing [to pursue their GBL §§ 349 and 350 claims] because no plaintiff alleges that they read and relied on the 'non-GMO' labeling statement prior to purchasing the products.").

have rejected requests for similar inferences where the pleading omitted such basic facts. For example, in *Oden v. Boston Scientific Corporation,* 330 F. Supp. 3d 877, 901–03 (E.D.N.Y. 2018), *adhered to on reconsideration*, No. 18-CV-0334 (SJF)(SIL), 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019), the Court held that, although the plaintiff "set forth certain statements contained on [d]efendant's website and in its product brochure" and alleged that he and his physicians, "prior to the date of [the] [p]laintiff's implant surgery, relied on the [d]efendant's representations about the product," none of the plaintiff's allegations "provide[d] any indication that the [p]laintiff ever saw these statements and, to the extent he did, where, when and how plaintiff came to view either the website or the product brochure." *Id.* Thus, "the relevant factual background to support [the plaintiff's general assertions was] simply lacking." *Id.* Similarly here, Plaintiffs' allegations "neither explicitly state nor permit the plausible inference" that they actually saw the statements prior to making their purchases at Starbucks. *Oden*, 330 F. Supp. 3d at 901–03.[3]

In fact, there is even less basis for an inference here than in *Oden* because Defendant's Initial MTD specifically highlighted Plaintiffs' failure to allege that they saw any of the alleged misrepresentations prior to purchasing products from Starbucks, but Plaintiffs nonetheless stopped short of alleging that they saw the identified statements prior to their purchases. Instead,

---

[3] The cases Plaintiffs cite are easily distinguishable because in each the purported misrepresentation appeared on the product itself, which does permit an inference that the consumer saw the statement. *See Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014) (". . . Plaintiff describes in detail the allegedly misleading and deceptive statements contained on the Drive's packaging upon which he relied in purchasing the product."); *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 446 (E.D.N.Y. 2015) ("[Plaintiff] states that he saw the package and price before purchase.") (citations omitted); *Goldemberg,* 8 F. Supp. 3d at 480 ("Defendant challenges the allegations of causation only as to the alleged statements on Defendant's website and Facebook page, but does not dispute that Plaintiff saw the Aveeno labels prior to purchasing the products."). Here, Plaintiffs do not allege that any of the alleged misrepresentations appeared on the products themselves.

they merely allege that three of the eleven named Plaintiffs saw some of the purported misrepresentations at some unspecified time in some unspecified place in New York. Am. Comp. ¶¶ 32, 34, 38, 40. The Court should not infer what Plaintiffs themselves would not expressly allege.[4] In sum, because Plaintiffs fail to assert that they saw any of the Starbucks statements prior to their purchases, their GBL §§ 349 and 350 claims should be dismissed.

## II. Plaintiffs' Opposition Fails to Assert Any Actionable Statements

### A. Plaintiffs Do Not Allege a Single Actionable Statement by Starbucks

Plaintiffs argue that a smattering of Defendant's statements—*e.g.*, "the finest in the world" and "the kind of ingredients you would use at home"—are "proven false by the Company's willingness to allow its products, and the Starbucks environment generally, to be contaminated by DDVT." *See* Opp. at 12. However, the statements that Plaintiffs identify are all textbook puffery because each is subjective, vague, and contains no specific promises or definite results of any kind. *Avola v. Louisiana-Pacific Corp.*, 991 F.Supp.2d 381, 393 (E.D.N.Y. 2013) (quoting *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107 (10th Cir.2009)) ("One reason such [puffery] statements are not to be relied on is that they could not possibly mean everything that might be implied.").

In stark contrast, the cases Plaintiffs cite involve statements that were specific and measureable. For example, in *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG)(RML), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010), the district court denied the defendant beverage

---

[4] Indeed, this is not a case where Starbucks possesses unilateral access to the information Plaintiffs need to sufficiently meet their pleading obligations. Plaintiffs themselves, rather than Defendant, are in the best position to identify the particular advertisement they allegedly saw that influenced their decision to purchase the Starbucks product. *See Small v. Lorillard Tobacco Co.*, 252 A.D.2d 1, 8, 679 N.Y.S.2d 593, 600 (1998), aff'd, 94 N.Y.2d 43, 720 N.E.2d 892 (1999) ("Only when defendants effectively controlled all the information about the transaction will the existence of misrepresentations give rise to an inference of reliance without need for further proof.").

manufacturer's motion to dismiss GBL §§ 349 and 350 claims because it misleadingly marketed and advertised its beverage as "specially formulated with bioactive components that contribute to an active lifestyle by promoting healthy, pain-free functioning of joints, structural integrity of joints and bones, and optimal generation and utilization of energy from food" as well as "specially formulated with nutrients that enable the body to exert physical power by contributing to structural integrity of the musculoskeletal system, and by supporting optimal generation and utilization from food" on the label of [defendant's] 'Power–C' flavor." *Id.* at 5.  Similarly, *Petrosino v. Stearn's Prods., Inc.*, involved a party who labeled their product as "natural" when the ingredients contained in the product were allegedly synthetic.  No. 16 Civ. 7735 (NSR), 2018 WL 1614349, at *7, n.6 (S.D.N.Y. Mar. 30, 2018).

Because Plaintiffs have not identified any actionable deceptive statement, they have not stated a GBL §§ 349 or 350 claim.

### B.     Plaintiffs' "Cumulative Effect" Argument is Baseless

Hedging their bets, Plaintiffs also argue that even if the statements are not individually actionable under GBL §§ 349, the "cumulative effect" of the inactionable statements as a whole is deceptive and misleading.  Opp. at 15.  Put another way, Plaintiffs argue that although statements by Starbucks containing the word "premium" may be non-actionable, a generalized campaign that creates the impression that Starbucks provides "premium products" in a "premium environment" should be actionable.  Opp. at 3-4.  This defies common sense and, in the modern era of broad marketing campaigns, would completely swallow New York's well-established puffery and opinion doctrines.  While courts have held that statements should be viewed in context if they are part of an overarching marketing campaign, *see Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 (NGG)(RML), 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24,

2014)), it is absurd to argue that the combination of non-actionable statements—even when viewed in context—suddenly become actionable because they are part of a broader campaign.

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005) gives no help to Plaintiffs because it applied an outdated pleading standard and, even under that more permissive test, the allegations of a 'generalized' advertising campaign were ultimately rejected. The Second Circuit did not squarely address the advertising allegations. The question before the Second Circuit in *Pelman* was whether plaintiffs had sufficiently alleged that the defendants' products caused their health injuries—not whether the 'cumulative effect' of advertisements that are individually inactionable puffery are actionable as a collective.

*Pelman* involved a case by two minors who alleged that the combined effect of McDonald's various promotional representations created the false impression that McDonald's food products were nutritionally beneficial and part of a healthy lifestyle if consumed daily. 396 F.3d at 510. The *Pelman* plaintiffs—who ate at McDonald's three to five times a week for 15 years—further alleged that they would not have purchased and/or consumed the [McDonald's] food products but for [McDonald's] representations and campaigns. *Id*. (internal quotations omitted). Additionally, the plaintiffs claimed they developed certain illnesses from their consumption of the McDonald's food products. *Id*. Based on these allegations, the *Pelman* plaintiffs alleged that McDonald's violated GBL §§ 349 and 350. *Id*. The district court dismissed the plaintiffs' GBL § 349[5] claim because the plaintiffs failed to draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries.[6] *Id*.

---

[5] The district court's dismissal of the plaintiff's GBL§ 350 claim was not the subject of appeal. *Pelman*, 396 F.3d at 511.

[6] More specifically, the district court held that in order to allege that McDonald's products were a significant factor in the plaintiffs' obesity and health problems, the complaint needed to address other variables that could have contributed to the plaintiffs' health problems and, if

at 511-512. The Second Circuit reversed on the basis that the plaintiffs had adequately alleged a causal connection between their consumption of McDonald's food and their alleged injuries, and that the plaintiffs were not required to address and eliminate other variables that could have contributed to their health problems at the pleading stage. *Id.* at 512.

In their Opposition, Plaintiffs rely on the Second Circuit's holding that an action under § 349 does not need "to be pled with particularity." Opp. at 16. What Plaintiffs conveniently fail to mention is that in the 14 years since *Pelman*, multiple New York courts have now explicitly stated that the "bare-bones notice-pleading requirements for GBL § 349 claims described in *Pelman* ***have been superseded*** by the more rigorous plausibility standards set forth in [*Iqbal*], and [*Twombly*]." *Precision Imaging of New York, P.C.*, 263 F.Supp.3d at 475 (S.D.N.Y. 2017) (emphasis added); *see also Weyant v. Phia Group LLP*, 2018 WL 4387557, at *7 (S.D.N.Y. 2018) (same).

Plaintiffs also overstate the significance of a footnote in which the Second Circuit noted that the cure for allegations of a generalized campaign that were vague and conclusory is a motion for a more definite statement, rather than dismissal. Opp. at 16 (*citing Pelman* 396 F.3d at 512, n.5). This footnote did not address the issue here of whether individually inactionable statements are actionable collectively. Moreover, the Second Circuit never actually weighed in on the adequacy of the plaintiffs' allegations of a generalized campaign. *See Pelman*, 396 F.3d 508. And, on remand, the district court ultimately determined that the plaintiffs' allegations of a generalized campaign ***were inadequate*** where the plaintiffs failed to identify each of the alleged misrepresentations that made up the campaign. Specifically, it noted on remand that "[w]ithout

---

possible, eliminate them or show that a "McDiet" is a substantial factor despite these other variables. *Pelman ex rel. Pelman v. McDonald's Corp.*, No. 02 CIV. 7821 (RWS), 2003 WL 22052778, at *11 (S.D.N.Y. Sept. 3, 2003), vacated in part, 396 F.3d 508 (2d Cir. 2005), 396 F.Supp.2d 439, 446 (S.D.N.Y. 2005).

7

information as to which of McDonald's representations comprised the nutritional schemes alleged to have injured the plaintiffs, McDonald's can neither admit, nor in good faith deny, the Consumer Protection Act violations." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 445 (S.D.N.Y. 2005).  Similarly here, while Plaintiffs allege a generalized marketing campaign by Starbucks, Plaintiffs do not identify each of the statements that purportedly make up this campaign.  Opp. at 3-4.  Therefore, even under the less rigorous pleading standard applied by the Court in *Pelman*—a standard that has been superseded by *Iqbal* and *Twombly*—Plaintiffs' allegations are still inadequate.

### III.  Plaintiffs Fail to Adequately Plead How a Reasonable Consumer Would Be "Materially Misled" By Starbucks Statements

As Plaintiffs themselves point out in their Opposition, this is not a case "where [a] defendant claimed its product was 'natural' when it contained artificial food coloring."  Opp. at 19.  Instead, Plaintiffs' base their deceptive and false advertising claims on their allegations that, through its marketing campaign, "Starbucks fostered an image of a company that cares about its customers and only provides premium products in a premium environment."  Opp. at 2. Plaintiffs further argue that based on these general impressions created by Defendant's "marketing campaign," a reasonable customer would disregard the NYC Department of Health's rating, which is posted on the window in the front of every Starbucks location, in determining how sanitary each location is.  This argument fails as a matter of law.

Caring about one's consumers is a common ethos adopted by companies throughout the country. Under Plaintiffs' logic, every marketing campaign—which inevitably communicates a positive ethos about the advertising company—would expose the company to a host of deceptive

practices and false advertisement claims anytime a customer has any issues or concerns. This is certainly not what GBL §§ 349 and 350 are intended to protect against.[7]

As Plaintiffs recognized in their Opposition, in appropriate cases, a court can dismiss a deceptive advertisement claim where it is implausible that the advertisement would have misled a reasonable consumer. Opp. at 19; *Fink v. Timer Warner Cable*, 810 F.Supp. 2d 633, 741-742 (S.D.N.Y. 2011). This is one of those cases. Given the total disconnect between the general impressions Plaintiffs allege Defendant's representations conveyed and the condition of any Starbucks location, it is implausible that the statements could have misled or deceived a significant portion of reasonable consumers about the conditions of Starbucks stores. *Eidelman v. Sun Prod. Corp.*, No. 16 Civ. 3914 (NSR), 2017 WL 4277187, at * 4 (S.D.N.Y. Sept. 25, 2017) ("[A]n interpretation is unreasonable as a matter of law . . . where, for instance, a plaintiff's claims as to the impressions that a reasonable consumer might draw are 'patently implausible' or unrealistic."); *see also Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017) (citation omitted) ("[a]ssuming that a reasonable consumer might ignore the evidence plainly before him attributes to consumers a level of stupidity that the Court cannot countenance and that is not actionable under G.B.L. § 349.").

## IV. Plaintiffs' Request for Emotional Distress Damages Fail As a Matter of Law

Plaintiffs cite a number of cases for the proposition that there is no categorical rule preluding recovery for emotional harm for claims under the GBL. That, of course, is not Defendant's position. Rather, Defendant's argument is that Plaintiffs' request for emotional harm here is deficient because it is implausible and wildly speculative. Plaintiffs' attempt to

---

[7] *See Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 33 (E.D.N.Y. 2006), aff'd, 213 F. App'x 16 (2d Cir. 2007) ("The typical violation contemplated by [GBL § 349] involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising.").

9

allege emotional harm boils down to this: a customer, who may or may not have viewed an advertisement like "Taste of Inspiration" prior to purchasing a Starbucks product, is now suffering from "anxiety" and "fear for their physical wellbeing" over an alleged pesticide that may or may not have been in the Starbucks product they purchased. This theory is implausible because Plaintiffs are arguing that they were unaware of Defendant's alleged use of the pesticide and they thus could not have suffered distress after consuming Defendant's products. Moreover, Plaintiffs do not allege that they or any other consumer suffered any physical injury because of consuming Defendant's products. The connection between Defendant's allegedly deceptive advertisements and Plaintiffs' supposed emotional distress is also far too attenuated. *Harris v. Dutchess Cty. Bd. of Co-op Educ. Servs.*, 25 N.Y.S.3d 527 (N.Y. Sup. Ct. 2015) remains instructive because, like here, the plaintiff's alleged "emotional distress" was so far removed from the defendant's advertisements that it could not reasonably be construed as the direct result of the advertisement. Plaintiffs' unsubstantiated claim that an advertisement like "[a] company that cares" led to so-called "distress" is implausible and speculative and not recoverable under GBL §§ 349 and 350.

## CONCLUSION

For all of the above reasons and the reasons asserted in Defendant's Motion to Dismiss Plaintiff's Amended Class Action Complaint (ECF No. 27), the Court should dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.

Dated: October 11, 2019                              Respectfully submitted,

                                                     */s/ David J. Lender*
                                                     David J. Lender #2583722
                                                     **WEIL, GOTSHAL & MANGES LLP**
                                                     767 Fifth Avenue
                                                     New York, NY 10153

Telephone: (212) 310-8000

David R. Singh #4252094
Bambo Obaro (*pro hac vice*)
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3000

*Attorneys for Starbucks Corporation d/b/a
Starbucks Coffee Company*

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2019, I caused **Defendant's Reply in Support of Motion To Dismiss Amended Class Action Complaint** and supporting memorandum of law to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

>     */s/ David J. Lender*
>     David J.  Lender #4252094
>     **WEIL, GOTSHAL & MANGES LLP**
>     767 Fifth Avenue
>     New York, NY 10153
>     Telephone: (212) 310-8000
>     david.lender@weil.com