UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                       │
│ DATE FILED: 11/19/2020               │
└─────────────────────────────────────┘
```

Christopher George, *et al.*,

                    Plaintiffs,

        –v–

Starbucks Corporation,

                    Defendant.

19-cv-6185 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

In this putative class action, Starbucks customers allege that the popular coffee chain violated New York consumer protection laws by advertising the quality of its products while employing noxious pesticides at several of its New York locations. Starbucks moves to dismiss. Because the customers have failed to allege that Starbucks engaged in deceptive practices or false advertising, the Court grants the motion.

**I.      Background**

For purposes of this motion, the Court takes as true all factual allegations in the customers' Amended Class Action Complaint ("FAC"), Dkt. No. 21, and draws all reasonable inferences in the customers' favor.

Starbucks markets itself as a high-end coffee brand making use of quality ingredients. *Id.* ¶ 26. It claims to serve "the finest whole bean coffees." and maintain a reputation for "quality" products. *Id.* ¶¶ 35–36. Its ads include phrases like "Best Coffee for the Best You" and "It's Not Just Coffee. It's Starbucks." *Id.* ¶ 31, 37. The company also advertises a warm,

welcoming environment at its stores.  *Id.* ¶ 29.  In short, Starbucks promises a "PERFECT" coffee experience.  *Id.* ¶ 39.

But Starbucks isn't "PERFECT," the customers allege, because many of its New York locations are infested with flies, cockroaches, fruit flies, and silverfish.  *Id.* ¶¶ 58–60.  To abate these pests, Starbucks employees deploy the Hot Shot No-Pest 2 Strip.  *Id.* ¶¶ 63–67, 85–91.  The No-Pest Strip is a time-release device that emits a powerful pesticide, 2,2-dichlorovinyl dimethyl phosphate (often abbreviated "DDVP"), into the air.  *Id.* ¶¶ 1–2, 63.  These devices are designed for use only in unoccupied structures.  *Id.* ¶¶ 64, 79.  Despite manufacturer warnings against use of No-Pest Strips in food service establishments, the customers' complaint features photographs of the strips by air vents, inside pastry trays, and under store counters.  *Id.* ¶¶ 2, 88–91.  The CDC warns that exposure to DDVP can cause symptoms as serious as coma and death, though none of the customers complain that they got sick.  *Id.* ¶ 2–4.

Because Starbucks fails to live up to its branding as a "premium" coffee retailer, the customers allege that it runs afoul of New York consumer protection laws that prohibit false advertising and deceptive business practices.  *See id.* ¶¶ 26, 152–159; New York Gen. Bus. Law §§ 349–350.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Litwin v. Blackstone Grp.*, L.P., 634 F.3d 706, 715 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When determining whether a complaint states a claim, a court accepts as true all allegations in the complaint and draws all reasonable inferences in favor of the non-moving party. *Id.*

### III.    Discussion

#### A.    Consumer Protection Claims

New York General Business Law §§ 349 and 350 prohibit "[d]eceptive acts or practices" and "[f]alse advertising" "in the conduct of any business, trade or commerce." "To successfully assert a claim under General Business Law § 349(h) or § 350, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675–76 (N.Y. 2012) (mem.) (quoting *City of New York v. Smokes-Spirits.com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009)). "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to Section 349." *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 395 (N.Y. App. Div. 2010) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002)).

A claim under § 349 does not require proof of justifiable reliance; however, whether a practice is materially misleading is judged by an objective standard. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995). Deceptive practices are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* Courts may decide whether this objective test is satisfied as a matter of law or fact, as individual cases require. *Id.*

The customers do not allege any statements likely to mislead reasonable consumers. Nearly all of the language the customers object to consists of obvious "puffery"— "[s]ubjective claims about products, which cannot be proven either true or false." *Time Warner Cable, Inc. v.*

*DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995)); *see, e.g.*, *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004) ("Puffery is not actionable under sections 349 and 350 . . . ."). "Vague[] and commendatory language,"—like claims that one sells the "best coffee," FAC ¶ 31, or that one's products are "PERFECT," *id.* ¶ 39—are not likely to mislead reasonable consumers, because reasonable consumers would understand these claims to be "an expression of the seller's opinion only." *Time Warner Cable*, 497 F.3d at 159 (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993) (quoting W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 109, at 756–57 (5th ed. 1984))).  "[N]o reasonable buyer would take it at face value," and so "there is no danger of consumer deception." *Id.*

Only one statement cited in the amended complaint could, if false, support a claim for deceptive business practices: that Starbucks baked goods contain "no artificial dyes or flavors." FAC ¶ 87.  If the company's baked goods contained artificial dyes or flavors, its advertising would be false and likely to mislead a reasonable consumer.  But DDVP is not an artificial dye or flavor.  No reasonable consumer would understand that statement to convey any information about the company's use or non-use of pesticides in its stores.  *See Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018) (a pesticide "is not an 'ingredient'"), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020); *see also Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) (per curiam).

The customers contend, however, that the whole of Starbucks's brand messaging is more than the sum of its parts.  They point to two cases in which courts allowed suits to proceed where a defendant's advertisements were not literally false when taken in isolation.  In *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), the Second Circuit vacated the

dismissal of a claim under § 349 where plaintiffs alleged that McDonald's had deceived consumers about the healthfulness of its foods.  In *Verizon Directories*, 309 F. Supp. 2d 401, a district court declined to dismiss a claim based on advertisements that portrayed the Yellow Book directory as more popular than the Verizon SuperPages.

In both cases, the plaintiffs claimed that a focused advertising campaign implied specific, falsifiable facts.  The commercials in *Verizon Directories* were "skillfully crafted and shown at great expense to subtly but firmly communicate an idea—that the Yellow Book is preferred by users to Verizon's book and that, more to the point, advertisers will reach more potential consumers if they put their names and money in the former rather than the latter."  *Verizon Directories*, 309 F. Supp. 2d at 407.  That is, through images and innuendo, the commercials conveyed a fact.  If it would be false to say that more people used the Yellow Book than the SuperPages, then communicating the same claim indirectly could also be misleading.  In *Perlman*, the Second Circuit decided only that a claim under § 349 need not satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  But that case, too, involved an advertising campaign that sought to convey specific facts about McDonald's products: "that McDonald's foods are nutritious and can easily be part of a healthy lifestyle."  *Perlman ex rel. Perlman v. McDonald's Corp.*, 2003 WL 22052778, at *1 (S.D.N.Y. Sept. 3, 2003).  "McDonald's ha[d] described its beef as 'nutritious' and 'leaner than you think.'  And it ha[d] described its french fries as 'well within the established guidelines for good nutrition.'"  *Id.* at *2 (internal citations omitted).

The customers here do not allege that Starbucks's advertisements communicate—even indirectly—any specific details about its products.  Instead, they contend that Starbucks's advertisements are misleading because they portray it as providing "premium products made

with the best ingredients."  Plf. Br., Dkt. No. 31, at 17.  A claim that a seller's wares are "premium" or "the best" cannot support a cause of action for deceptive practices, whether made in a single advertisement or a hundred.  Because the customers fail to allege any materially misleading conduct, their claims under New York General Business Law §§ 349 and 350 fail.

### B.      Leave to Amend

Under this Court's individual rules, plaintiffs have an opportunity following a motion to dismiss to amend their complaint to cure any defects made apparent by the motion.  The customers did so, and they do not request further leave to amend in their opposition to Starbucks's motion.  The Court also finds that further amendment would be futile because none of the statements in Starbucks's advertising convey or imply any information related to the use of pesticides in its stores.  The Court therefore dismisses the amended complaint with prejudice.

### Conclusion

Sections 349 and 350 of the New York General Business Law prohibit deceptive practices, not (allegedly) unhygienic ones.  The customers have failed to allege deceptive practices or false advertising.  The Court therefore GRANTS the motion to dismiss (Dkt. No. 26) and dismisses all claims with prejudice.  The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: November 19, 2020
       New York, New York                    _____
                                                      ALISON J. NATHAN
                                                 United States District Judge